UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ROBERT A. ALLEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 1:10-CV-1522-TWP-MJD |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

**ENTRY ON JUDICIAL REVIEW**

Plaintiff, Robert A. Allen ("Allen"), requests judicial review of the decision of Defendant, Michael J. Astrue, Commissioner of Social Security Administration ("the Commissioner"), denying Allen's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). For the reasons set forth below, the Commissioner's decision is **REMANDED** for further proceedings consistent with this opinion.

**I. BACKGROUND**

**A. PROCEDURAL HISTORY**

On August 1, 2007, Allen filed applications for DIB and SSI, alleging that he became disabled on June 29, 2007. His application was denied initially on October 24, 2007 and upon reconsideration on January 24, 2008. On March 24, 2010, Allen appeared with counsel and testified at a video hearing before Administrative Law Judge ("ALJ") Gregory M. Hamel. On April 22, 2010, the ALJ issued his decision finding that Allen was not disabled. On October 29, 2010, the Appeals Council denied review of the ALJ's decision. The ALJ's decision is therefore the final decision of the Commissioner for purposes of judicial review.

1

## B. MEDICAL HISTORY

Allen was 40 years old on his alleged onset date of June 29, 2007.  (R. at 24).  He has a high school education and lives with his parents.  (R. at 33, 34-35).  Allen has a 20 percent permanent disability rating with the Veteran's Administration ("VA") and receives $225.00 per month in income from the VA.  (R. at 152, 35).  Allen was previously employed as a janitor and a meat cutter.  (Pl.'s Br. 10).

Allen has a history of knee problems (R. at 278, 320, 400).  In August 2006, Allen visited a VA hospital for "progressive gait, balance problems."  (R. at 232).  On December 4, 2006, Allen was treated by Dr. Shah.  (R. at 254).  Dr. Shah noted that Allen began having difficulty walking in November 2005 due to numbness in his legs, and that his condition had progressively worsened over the years.  (R. at 254).  An MRI showed "disc/osteophyte complex with cord signal change at C6-7," and Allen was diagnosed with "cervical spondylitic myelopathy[1]."  (R. at 256).  On December 7, 2006, Allen underwent Anterior Cervical Discectomy and Fusion surgery on his spine at C6-C7.[2]  (R. at 313, 346-348).  Allen's diagnosis before and after the surgery was "[c]ervical myelopathy from C6-C7 herniated disc."  (R. at 346).  Following the operation, Allen was issued a shower chair and walker.  (R. at 248, 389).

---

[1.]  Cervical spondylitic myelopathy refers to impaired function of the spinal cord caused by degenerative changes of the discs and facet joints acquired in adult life. www.spine-health.com/.../understanding-cervical-spondylotic-myelopathy

[2.] Anterior Cervical Discectomy and Fusion is described in Allen's medical records as follows:
 This procedure involves the removal of a vertebral disc (tissue that separates the vertebral bones of the spine) and fusing (uniting) the front of the involved vertebrae to prevent movement.  The disc needs to be removed because it is pressing against the spinal cord (thick band of nervous tissue inside the center of the spinal column and connected to the brain) and causing unwanted symptoms.

(R. at 314).

In 2007, Allen attended multiple doctor appointments to follow up on his progress after the surgery.  In January 2007, Allen reported improvement in his lower extremities: he was able to bend his knees, and no longer had problems balancing.  (R. at 290).  He noted that his ability to walk was improving and that he was using a walker and a cane.  (R. at 290).  At his May 25, 2007 appointment, Dr. Singh reported that Allen's myelopathy had improved slightly, but Allen continued to have knee pain.  (R. at 284).

On August 1, 2007, Allen filed his application for DIB and SSI benefits with an onset date of June 29, 2007.  The ALJ began his analysis of Allen's condition beginning with the July 2007 post-operative doctor's appointment.  (R. at 21).  At this appointment, Dr. Daly noted Allen's "walking has improved markedly following surgery."  (R. at 282).  Allen reported numbness in his foot, tingling in his lower extremities, and difficulty walking.  (R. at 282).  Dr. Daly noted that Allen's gait was unsteady and he had difficulty walking on his toes.  (R. at 283).

In August 2007, Allen was treated for left knee pain and bilateral foot pain.  (R. at 401).  Allen reported that both injuries dated back to his time in the military.  (R. at 400).  The record noted that Allen's left ACL was reconstructed in 2000.  (R. at 400).  Dr. Powell noted Allen had an antalgic gait with a stiff knee, and this gait limited his walking distance to four blocks.  (R. at 274-75).  Dr. Powell concluded that Allen had pain in his left knee due to "loose body with subsequent OA" that, more likely than not, stemmed from his military injuries.  (R. at 276).  Dr. Garrido's report stated as follows: "The patient states his left knee is now giving him more problems with activity and pain with stairs and any aggressive activity such as running or biking." (R. 400). Dr. Garrido concluded that Allen's foot pain was due to a lack of range of motion and likely did not result from any injury sustained during his time in the military.  (R. at 401).  Regarding Allen's left knee, Dr. Garrido concluded Allen's pain was associated with his

previous knee surgery and likely chondromalacia changes.  (R. at 401).  Dr. Garrido recommended an MRI to investigate whether there were new chondromalacia changes and to rule out a new meniscal tear.  (R. at 401-02).

On September 27, 2007, at the request of the Social Security Administration, Dr. Shuyan Wang examined Allen.  (R. at 355).  Dr. Wang reported that Allen ambulated relatively slowly with a wide base gait, walked with a limp on the left leg, and slightly dragged his left foot.  (R. at 356).  Dr. Wang observed that Allen had: (1) a history of cervical spine injury and was post-surgery; (2) bilateral feet numbness, left foot weakness, and bilateral leg spasm that were likely secondary to the spinal cord injury; (3) an unstable gait; and (4) bilateral knee pain.  (R. at 359).  Dr. Wang opined that Allen could work an eight hour day while primarily in a seated position with occasional standing or walking.  (R. at 359).  Dr. Wang observed that Allen was able to "walk pretty stably without [an] assistive device during the examination," and he was "able to stand stably."  (R. at 359).  Dr. Wang concluded that Allen could push, pull, lift, or carry 10 pounds frequently and 20 pounds occasionally.  (R. at 359).  He should not, however, do heavy lifting or climbing and has difficulty squatting.  (R. at 359).  Dr. Wang noted Allen should be able to use his upper extremities for reaching and fine manipulation; however, his ability to operate foot controls with his lower extremities was likely partially limited.  (R. at 359).

On October 22, 2007, Dr. M. Brill reviewed Allen's medical record and completed a Residual Functional Capacity Assessment ("RFCA").  (R. at 362-69).  Dr. Brill concluded that Allen could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk at least two hours in an eight hour workday, and sit for a total of approximately six hours in an eight hour workday.  (R. at 363).  Dr. Brill concluded that Allen: (1) was unlimited in his ability to push and/or pull hand and/or foot controls (R. at 363); (2)  could occasionally

climb, balance, stoop, kneel, crouch, and crawl (R. at 364); and (3) should avoid wet, uneven terrain, dangerous machinery, and unprotected heights.  (R. at 366).  Dr. Brill noted no other limitations.  (R. at 365-66).  On January 23, 2008, Dr. J.V. Corcoran affirmed Dr. Brill's assessment.  (R. at 506).

On November 9, 2007, Allen was treated by Dr. Singh for increasing knee instability.  (R. at 412-13).  Allen stated that occasionally his left knee gave out and his hip locked up.  (R. at 412).  Allen reported falling down due to his knee problem.  (R. at 412).  Dr. Singh recommended physical therapy to stabilize his knee joints.  (R. at 413).

In January 2008, in response to a questionnaire from the Disability Determination Bureau, Allen reported that he loses his balance while standing, his legs give out, and he falls often.  (R. at 204).  On January 9, 2008, Allen attended a physical therapy evaluation.  (R. at 669).  He reported that he fell frequently and that his lower extremities had progressively become weaker.  (R. at 669).  The physical therapist noted that Allen had knee braces, but did not wear them.  (R. at 669).  Allen had a very unsteady gait and used a cane for ambulation.  (R. at 669).  On June 6, 2008, Allen was treated by Dr. Stark for numbness and tingling in his bilateral lower extremities.  (R. at 680).  Allen reported burning and stabbing pain in his feet.  (R. at 680).  Dr. Stark concluded Allen's symptoms were most likely secondary to cervical myelopathy.  (R. at 682).  On December 5, 2008, Allen reported the numbness and tingling in his feet were unchanged.  (R. at 721).  He also reported occasional pain in his calves and lower back.  (R. at 721-22).  Dr. Daly noted Allen had difficulty walking and had to be supported without his cane. (R. at 723).

On February 19, 2009, the VA assessed Allen's functional capacity in an evaluation ("FCE").[3]  (R. at 708).  Allen reported arthritis in his left knee, neuropathy in his feet, lower back pain, and numbness in his left hand.  (R. at 708).  Allen reported his walking tolerance was three to four city blocks.  (R. at 708).  The FCE report concluded that Allen's functional performance abilities were sedentary.  (R. at 718).  Allen could occasionally lift and/or carry a maximum of 20 pounds, was capable of standing for 16 minutes at a time (or if actively standing by lifting, bending, or carrying, he was capable of standing for six to eight minutes, at which time he would need a break to sit down).  (R. at 718-19).  The FCE report concluded that Allen could not perform a job that required him to stand more than 20 percent of the workday, but that sitting would be acceptable, provided that he had multiple opportunities to stand and change his posture. (R. at 719).

On February 23, 2009, an MRI revealed a "[l]arge disc herniation with severe cervical stenosis and bilateral foraminal stenosis" and "mild cervical stenosis at C4-C5."  (R. at 703).  On April 6, 2009, Allen reported increased difficulty ambulating, that he walks with a cane, progressive weakness of his arms, numbness in his hands and feet, and occasional difficulty voiding.  (R. at 699).  The doctor recommended surgery.  (R. at 701).

On June 4, 2009, Dr. Todd Eads performed a posterior C3, C4, and partial C5 laminectomy on Allen.[4]  (R. at 693).  On September 21, 2009, Allen had a follow up examination at which he reported that his pain had improved following the surgery.  (R. at 726).  Allen reported residual numbness in his arms and lower back pain with no significant lower extremity

---

3. The ALJ refers to the FCE as an "occupational therapy assessment" in his decision.
4. A laminectomy is a surgery in which a lamina bone is removed.  *Laminectomy*, WIKIPEDIA.ORG, http://en.wikipedia.org/wiki/Laminectomy (last visited December 20, 2011).  In Allen's case, his C3, C4, and part of his C5 lamina bones were removed. (R. at 694).

involvement.  (R. at 726).  A three-view cervical spine series performed that day revealed stable cervical fusion hardware and no evidence of complications.  (R. at 725).

## C. THE ADMINISTRATIVE HEARING

### 1.  Allen's Testimony

The Administrative Hearing was held on March 24, 2010.  (R. at 34).  Allen testified he had not been employed since his alleged onset date of June 29, 2007.  (R. at 33-34).  From February 2005 to June 2007, Allen worked at Wabash College.  (R. at 51).  Allen stated he was let go from his job at Wabash College because he missed work two to three days per week due to his health issues.  (R. at 43).  The absences from work began in 2007 when he started to experience numbness in his feet.  (R. at 51).  Allen testified he earned $10 per hour at his previous employment.  (R. at 44).  Prior to his employment at Wabash College, Allen worked as a meat cutter at Kroger.  (R. at 51-52).  Allen testified he has a high school education, he lives with his parents, and he receives financial support from the VA.  (R. at 33, 34-35).

Allen testified he has back pain that extends from his neck to his lower back.  (R. at 40).  Allen described his pain as all day, every day, and all over.  (R. at 47).  Allen testified he has a permanent numbness in his feet and a relatively new numbness in his ankles and the back of his legs from sitting for 30 to 45 minutes or standing five to ten minutes.  (R. at 45-46).  Allen described the numbness as occurring daily.  (R. at 50).  Allen testified his left foot drags when he walks, and this occurs daily.  (R. at 49).  Allen always utilizes a cane to walk, and the maximum distance he could walk is four city blocks.  (R. at 40, 50).  Allen explained that he does not feel comfortable walking without his cane, because he is afraid he will fall due to the numbness in his feet.  (R. at 46).  Allen testified that he has fallen many times, including once while employed at Wabash College.  (R. at 46-47).  Allen reported medication alleviated his pain a little, but not

enough to allow him to "get up and move around."  (R. at 40).  Allen explained that he takes his medication when necessary, but he fears becoming addicted.  (R. at 47).  Allen testified the surgeries in 2006 and 2009 did not relieve his pain.  (R. at 41).

Allen stated he is stiff in the morning, sometimes will fall, and it takes him a couple hours to get going in the morning.  (R. at 43-44, 48).  He utilizes a handicap rail in the shower to bathe.  (R. at 48).  Allen testified that he cannot stand or sit for long periods of time.  (R. at 40).  Allen is able to feed his dogs and go to the grocery store, but he does not participate in any social activities, such as visiting friends or going to the movies, restaurants, or church.  (R. at 37-38, 39).  He is unable to help his mother with dishes for longer than five minutes at a time and is unable to perform yard work.  (R. at 37-38).  Allen testified he typically stays at home and tries to minimize his pain.  (R. at 37, 45).

## 2. Vocational Expert's Testimony

The Vocational Expert ("VE"), Ray Burger, testified that Allen's prior employment as a custodian is found at DOT 381.687-010 and is considered medium level work with a specific vocational preparation ("SVP") time of two.  (R. at 53-54).  The VE testified Allen's past work as a meat cutter is found at DOT 316.684-014 and is considered light level work with an SVP of two.  (R. at 54).  Allen's previous employment as a general laborer is found at DOT 922.687-058 and is medium level work with an SVP of two.  (R. at 54).

The ALJ posed a hypothetical question to the VE, inquiring whether the following individual could perform Allen's previous employment: an individual who is in his early 40s with a high school education; has Allen's prior work experience; has the ability to perform the lifting and carrying requirements of light work, but cannot stand or walk for more than a total of two hours during a work day; must avoid more than occasional climbing of stairs, balancing,

stooping, kneeling, crouching, or crawling; must avoid hazardous climbing; and may occasionally operate foot controls. (R. at 54-55). The VE responded that the hypothetical individual could not perform Allen's past work. Further, jobs that are light and unskilled could not accommodate the limitations listed in the hypothetical. (R. at 55). The VE testified the limitations described in the hypothetical fall within the sedentary category. (R. at 55). The ALJ asked the VE if there are jobs available for a person with the hypothetical limitations who is limited to sedentary level exertion, and, if possible, three examples of such jobs. (R. at 55). The VE responded with three examples of employment positions: (1) assemblers found at DOT 734.687-018, sedentary level with a SVP of two, 4,230 jobs in the state of Indiana, 94,197 nationwide; (2) packagers found at DOT 920.687-030, sedentary level with a SVP of two, 2,035 jobs in the state of Indiana, 107,260 nationwide; (3) inspectors found at DOT 739.687-182, sedentary level with a SVP of two, 539 positions in the state of Indiana, 13,135 nationwide. (R. at 56). The VE stated these three positions were simply examples and did not represent all positions available at this level. (R. at 56).

The ALJ then modified the hypothetical: if that same individual needed to get up from a seated position every 30 minutes to move around a bit (but remained productive overall), would he be able to perform the positions described above? (R. at 56). The VE responded in the affirmative. (R. at 57). The ALJ asked a final hypothetical question of the VE: whether a person could perform the above positions if his pain caused him to lose productivity one third of the day, or, in the alternative, caused absenteeism three or more days per month? (R. at 57). The VE responded in the negative. (R. at 57).

Upon questioning by Allen's attorney, the VE confirmed that, in the hypothetical, the individual could not perform light work, but could perform sedentary work. (R. at 58). The VE

also confirmed that there are positions available for an individual who must stand and move around after sitting for approximately two hours, but who then could go back to work and remain productive.  (R. at 58).  He clarified that the individual could not take a break for 15 to 20 minutes or be unproductive.  (R. at 57).  In response to further questioning by the ALJ, the VE stated that his testimony regarding productivity and absenteeism was not from the Dictionary of Occupational Titles, but from his professional experience.  (R. at 58).  The quantity of positions data the VE reported came from United Stats Publishing, Unskilled Employment Quarterly third quarter of 2009.  (R. at 59).

## II. <u>DISABILITY AND STANDARD OF REVIEW</u>

To be eligible for SSI and DIB, a claimant must have a disability under 42 U.S.C. § 423. "Disability" means the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 423(d)(1)(A).  In determining whether a claimant is disabled, an ALJ applies a five-step process set forth in 20 C.F.R. § 404.1520(a)(4):

1.    If the claimant is employed in substantial gainful activity, the claimant is not disabled.

2.    If the claimant does not have a severe medically determinable physical or mental impairment or combination of impairments that meets the duration requirement, the claimant is not disabled.

3.    If the claimant has an impairment that meets or is equal to an impairment listed in the appendix to this section and satisfies the duration requirement, the claimant is disabled.

4.    If the claimant can still perform the claimant's past relevant work given the claimant's residual functional capacity, the claimant is not disabled.

5.      If the claimant can perform other work given the claimant's residual functional capacity, age, education, and experience, the claimant is not disabled.

The burden of proof is on the claimant for the first four steps; it then shifts to the Commissioner at the fifth step. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

The Social Security Act, specifically 42 U.S.C. § 405(g), provides for judicial review of the Commissioner's denial of benefits. When the Appeals Council denies review of the ALJ's findings, the ALJ's findings become the findings of the Commissioner.  *See, e.g.*, *Hendersen v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).  This Court will sustain the ALJ's findings if they are supported by substantial evidence.  42 U.S.C. § 405(g); *Nelson v. Apfel*, 131 F.3d 1228, 1234 (7th Cir. 1999).  In reviewing the ALJ's findings, the Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the ALJ.  *Id.*  While a scintilla of evidence is insufficient to support the ALJ's findings, the only evidence required is "such evidence as a reasonable mind might accept as adequate to support a conclusion."  *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993).  However, the "ALJ's decision must be based upon consideration of all the relevant evidence."  *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).  Further, "[a]n ALJ may not discuss only that evidence that favors his ultimate conclusion, but must articulate, at some minimum level, his analysis of the evidence to allow the [Court] to trace the path of his reasoning." *Diaz*, 55 F.3d at 307.  An ALJ's articulation of his analysis "aids [the Court] in [its] review of whether the ALJ's decision was supported by substantial evidence." *Scott v. Heckler*, 768 F.2d 172, 179 (7th Cir. 1985).

### III. DISCUSSION

### A. THE ALJ'S FINDINGS

In his decision, the ALJ determined that Allen met the disability insured status requirements of the Social Security Act through December 31, 2011, and that Allen had not engaged in substantial gainful activity since his alleged onset date of June 29, 2007.  (R. at 18).  The ALJ found that Allen had cervical disc disease, cervical myelopathy, left knee pain associated with a history of anterior cruciate ligament reconstruction, and peripheral neuropathy with bilateral foot pain and numbness.  (R. at 18).  The ALJ further found these impairments were severe as defined under the Social Security Act and had caused more than a minimal effect on Allen's ability to perform basic work activities.  (R. at 18).  The ALJ concluded, however, that Allen's impairments did not meet or medically equal Listings 1.00, 1.04, 11.14 or any other impairment found in the regulations' Listing of Impairments.  (R. at 19-20).

The ALJ determined Allen had the residual functional capacity ("RFC") to perform sedentary work consistent with the following capabilities: occasionally climb stairs, balance, stoop, kneel, crouch, crawl, or operate foot controls; never climb ropes, ladders, or scaffolds; must get up from a seated position and move around before resuming the seated position every 45 minutes.  (R. at 20).  In making the above determinations, the ALJ found that Allen's statements regarding the intensity, persistence, and limiting effects of his symptoms were not credible to the extent that they were inconsistent with the RFC assessment.  (R. at 21).  Although the impairments could reasonably be expected to cause Allen's symptoms, the ALJ determined the medical record did not establish an inability to sustain all work because of these limitations. (R. at 21).  The ALJ then determined Allen was unable to perform his past relevant work.

Nonetheless, based on his RFC assessment, the ALJ found that Allen could perform sedentary jobs that exist in significant numbers in the national economy.  (R. at 24).

## B. ALLEN'S ARGUMENTS ON APPEAL[5]

### 1. Omission and Mischaracterization of Evidence

Allen alleges the ALJ failed to evaluate the evidence, mischaracterized the evidence, and failed to explain the basis for his conclusions.  The ALJ's decision must be supported by substantial evidence, and the ALJ "must provide a 'logical bridge' between the evidence and his conclusions." *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).  It is not necessary for the ALJ's decision to review every piece of evidence in the case record. *Id.*  Nonetheless, the "ALJ may not ignore an entire line of evidence that is contrary to [his] findings." *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001) (quoting *Henderson v. Apfel*, 179 F.3d 507, 514 (7th Cir. 1999)).  The court does not substitute its judgment for that of the ALJ or reweigh the evidence; plainly stated, the ALJ's decision is reviewed deferentially. *Terry,* 580 F.3d at 475.

Allen alleges the ALJ failed to discuss his increasing inability to ambulate, his propensity to fall, and his need of crutches or a cane.   Allen did not reference the record regarding the omitted evidence.  Contrary to Allen's assertions, the ALJ discussed Allen's ability to ambulate throughout his decision and concluded Allen "has ambulatory limitations" and those "limitations are fully accommodated by the RFC adopted here that limits him to no more than sedentary exertion."  (R. at 20).  In analyzing the limitations on Allen's ability to ambulate, the ALJ noted that Allen was able to walk four city blocks in August 2007, and Allen reported a walking tolerance of three to four city blocks in February 2009.  (R. at 19-20, 274-75, 708).  The ALJ relied on Dr. Wang's assessment of Allen's ability to ambulate "pretty stably" without his cane

---

[5] With unusual flair for a social security brief, Allen's counsel inserted a brief quote from the English poet William Wordsworth [Dkt. 22 at 24], which the Court enjoyed.  Although quoting poetry did not help claimant's case, it certainly enlivened the briefing.

in September 2007.  (R. at 22).  The ALJ noted the treatment records did not indicate "any significant changes in [Allen's] functioning" that would require limitations beyond that of sedentary work.  (R. at 22).  In November 2007 (R. at 412), January 2008 (R. at 204, 669), and at the hearing (R. at 46), Allen reported that he often falls.  The ALJ did not mention Allen's claim that he falls often in his decision; nonetheless, he accommodated Allen's "difficulties with balancing" with his restrictions.  (R. at 22).  The ALJ is not required to mention every piece of evidence in his decision, and this omission is not fatal.  It is sufficient that the ALJ's conclusion regarding Allen's ability to ambulate is supported by substantial evidence that he articulated in his decision.  The ALJ acknowledged Allen's ambulatory limitations and attempted to fully accommodate those limitations in the RFC (which restricted Allen to sedentary work).

Allen also alleges the ALJ omitted any discussion of the progressive weakness in his arms and the numbness in his hands.  In his discussion of Dr. Wang's September 2007 examination, the ALJ referred to the numbness in Allen's hands.  (R. at 21-22).  The ALJ noted that, at that same appointment, Allen had normal grip strength, could close all fingers, pick up coins, button clothing, and use a zipper with both hands.  (R. at 22).  The ALJ also discussed Allen's arm strength in his analysis of the February 2009 FCE, noting that Allen could not lift more than 20 pounds.  (R. at 22).  The ALJ found this consistent with his limitation of Allen to sedentary work that would require lifting no more than 10 pounds and items such as "docket files, ledgers, and small tools."  (R. at 22).  The ALJ noted Allen had "residual numbness intermittently in his arms" following his June 2009 surgery.  (R. at 23).  The ALJ did not omit the discussion of evidence regarding Allen's numb hands or weakness in his arms, and the ALJ's limitations in the RFC reflect that he considered this evidence.

Allen claims the ALJ mischaracterized Dr. Wang's February 2009 report.  Allen attacks the ALJ's observation (based on Dr. Wang's assessment) that Allen "was described as being able to ambulate without an assistive device 'pretty stably.'"  (R. at 20).  Dr. Wang's report included the following assessment: "Although his bilateral legs appeared to be spastic he is able to walk pretty stably without assistive device during the examination."  (R. at 359).  The ALJ referenced this sentence to support his conclusion that Allen's ambulatory limitations were not severe enough to meet or equal the requirements of a listed impairment.  Allen claims the ALJ took this sentence out of context and lists a series of observations from the report that he feels are more appropriate descriptions of his ability to ambulate.  The ALJ's reliance on this sentence from the report and his conclusion are logical.  Further, the ALJ did not ignore the other evidence in Dr. Wang's report.  Significantly, in the next sentence of his decision, the ALJ wrote that "[t]he evidence of record certainly establishes that the claimant has ambulatory limitations."  (R. at 20).  Allen also claims the ALJ erroneously relied on Dr. Wang's report to conclude that Allen could walk four blocks.  But this argument is unavailing; the ALJ referred to the February 2009 FCE as the source for that information.  (R. at 19-20).  Notably, in that FCE report, Allen himself reported the three to four block walking tolerance.  (R. at 708).

Allen alleges the ALJ omitted any discussion of the conclusion of the February 2009 FCE report that Allen was not capable of work.  Along similar lines, Allen contends that the ALJ mischaracterized the FCE report, because the report supported a conclusion that Allen was not capable of performing any work.  To bolster his argument that the FCE report concluded that he was not capable of work, Allen relies on a statement that he is not capable of lifting and carrying for a third of a work day or capable of lifting more than 50 pounds on an occasional basis (R. at 718).

The ALJ determined the FCE did not conflict with his conclusion that Allen was capable of performing sedentary work.  (R. at 22).   Notably, the first sentence of the FCE report states, "Veteran's observed functional performance is consistent with his perceived reports of functional performance abilities, that of being sedentary."  (R. at 718).  The FCE report concluded Allen was able to occasionally lift and carry no more than 20 pounds.  (R. at 718).  The ALJ noted this limitation was accommodated with sedentary work, which requires lifting no more than 10 pounds at a time.  (R. at 22).  The FCE report concluded Allen could not stand for more than 20 percent of the workday, and he could not sit for long periods of time without multiple opportunities to stand and change posture/position.  (R. at 719).   The ALJ addressed these limitations in his hypothetical questions to the VE, which led to the conclusion that Allen was not capable of performing his past work, but was capable of performing sedentary work.  (R. at 55-56).   In his decision, the ALJ noted the FCE's conclusions regarding Allen's ability to sit, stand, and walk were not inconsistent with a sedentary level of work.  (R. at 22).  The ALJ also specifically addressed the FCE's conclusion that Allen needed breaks to shift his posture, and included this requirement in the RFC limitations.  (R. at 20, 22).  It is clear that the ALJ analyzed and considered the FCE report.   His conclusions based on the report are logical and not a mischaracterization of the report.

Finally, Allen claims the ALJ ignored Allen's diagnoses of cervical spondylosis, large disc herniation, and severe spinal stenosis.   Therefore, according to Allen, the ALJ mischaracterized the medical evidence of record.  The ALJ concluded Allen had the following impairments regarding his spine: cervical disc disease and cervical myelopathy.  (R. at 18). Although Allen did not provide references to the record to support the diagnoses he alleges the

16

ALJ ignored, the Court was able to locate the conditions to which Allen is presumably referring.[6] In a May 2008 medical report, Dr. Singh listed "cervical spondylosis with myelopathy" in his assessment (R. at 687).  Similarly, a May 25, 2007 medical report listed "cervical spondylosis with myelopathy" as an active problem (R. at 286).  A February 23, 2009 medical report listed a diagnosis of "cervical myelopathy" and mentioned "cervical stenosis" in the notes.  (R. at 705).  An MRI was conducted the same day, and the corresponding report reflects an impression of "[l]arge disc herniation with severe cervical stenosis."  (R. at 703).

According to the North American Spine Society, "cervical spondylosis" and "cervical stenosis" generally refer to the same medical condition, and cervical stenosis and myelopathy may be interrelated conditions.[7]  After examining the record, it appears these additional diagnoses are a part of Allen's overall problem with his spine.  The ALJ failed to specifically list these diagnoses in his decision; nonetheless, he did not ignore their impact on Allen's abilities.  The ALJ relied heavily on the FCE (R. at 24) and the physical evaluation for that report occurred on February 19, 2009 (R. at 708), very close in time to the February 23, 2009 MRI and therefore likely an accurate indicator of Allen's impairments and abilities with the "[l]arge disc herniation with severe cervical stenosis."  Further, the ALJ gave greater weight to the FCE and Dr. Wang's assessments, because their conclusions restricted Allen's abilities more than the non-examining medical experts who completed the RFCAs.  (R. at 24).  The ALJ did not mischaracterize the

---

6. In his reply brief, Allen references a report from a May 2010 surgery (R. at 760), which includes a diagnosis of spinal stenosis.  This report occurred after the date of the administrative hearing in March 2010, and the Appeals Council later denied review of the ALJ's decision.  The evidence is therefore outside the scope of this court's review.  *See Eads v. Sec'y of Health & Human Servs.*, 983 F.2d 815, 816-17 (7th Cir. 1993) (evidence submitted after the administrative hearing, but before the Appeals Council decision, may not be reviewed by the court, unless the Appeals Council reviews the decision and issues a decision on the merits.).

[7] *Cervical Stenosis & Myelopathy*, NATIONAL AMERICAN SPINE SOCIETY PUBLIC EDUCATION SERIES (2006) http://www.spine.org/Documents/cervical_stenosis_2006.pdf.

evidence or ignore any of Allen's medical diagnoses or impairments.  The ALJ's conclusion that Allen could perform sedentary work is supported by substantial evidence.

## 2.   Impairments Meet or Equal a Listing

Allen alleges that the ALJ erred when finding that Allen's impairments did not meet or equal a listing.  In order to meet or equal a listing, Allen must show that his impairment fulfills "*all* of the specified medical criteria."  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).  "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.*

The ALJ analyzed Allen's impairments in general under Section 1.00 Musculoskeletal System and specifically under Listing 1.04 Disorders of the Spine.  (R. at 19).  Loss of function is defined under Section 1.00 as "the inability to ambulate effectively on a sustained basis."  20 C.F.R. Pt. 404 Subpt. P App. 1 1.00(B)(2)(a) (2011).  The inability to ambulate effectively is defined as "having insufficient lower extremity functioning to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of *both* upper extremities."  *Id.* 1.00(B)(2)(b)(1) (emphasis added).  Listing 1.04 describes disorders of the spine that are impairments within Section 1.00.  *Id.* 1.04.

Allen argues that his impairments fall within the description of disorders in 1.04; however, this completes only part of the analysis.  Allen must show that his impairments meet *all* of the criteria, and that includes the analysis of his loss of function – his inability to ambulate effectively.  The ALJ focused on this analysis in his decision and concluded Allen "provided no citation to treatment records establishing a loss of function or an inability to ambulate effectively as required under 1.00(B)(2)."  (R. at 19).

Allen claims the ALJ's conclusion was erroneous, because there was substantial evidence that Allen could not ambulate effectively. Allen emphasizes that he was issued forearm crutches and a walker by his doctors. Indeed, in September 2006, Allen received forearm crutches, (R. at 392-93), and, in December 2006, he received a walker and cane. (R. at 248, 389). In January 2007, at a follow up appointment to his surgery, Allen was utilizing a walker and a cane. (R. at 290). All three of these medical reports occurred before Allen's alleged disability onset date in June of 2007.

The ALJ's decision must provide logical analysis and be supported by substantial evidence. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009). The ALJ acknowledged that Allen had reported pain and numbness in his feet and difficulty walking, but concluded the evidence did not support an inability to ambulate effectively as defined in 20 C.F.R. Pt. 404 Subpt. P App. 1 1.00(B)(2). (R. at 19). The ALJ noted Allen is able to care for his own needs and can perform household chores, including shopping. And, in August 2007 and February 2009, Allen was able to walk three to four blocks. (R. at 19-20). The ALJ also considered Allen's use of a cane and Dr. Wang's September 2007 assessment that Allen was able to ambulate without it "pretty stably." (R. at 20). The medical reports the ALJ relied on followed physical examinations of Allen and post-dated his disability onset date. The ALJ concluded, "[t]he evidence of record certainly establishes that the claimant has ambulatory limitations, but it does not establish a severity which would meet the requirements of any listed impairment." (R. at 20).

The ALJ found that Allen's ambulatory limitations did not equal a loss of function as defined under Section 1.00. Allen's impairment, therefore, did not meet or equal listing 1.04, because all requirements of the listing under section 1.00 must be met. The ALJ did not ignore Allen's ambulatory limitations. Moreover, the ALJ accommodated Allen's limitations in the

RFC by restricting Allen to sedentary work.  (R. at 20).  The ALJ's conclusion that Allen's impairment did not meet or equal a listing was not erroneous.

**3.   The Combined Effect of Impairments**

Allen alleges the ALJ failed to consider whether the combined effect of Allen's impairments met or equaled a listing, and this failure requires reversal under SSR 02-01p.  SSR 02-01p is inapplicable to this case; it outlines the proper evaluation of obesity in disability claims, and there is no evidence or claim that Allen is obese.  SSR 02-01p, 67 Fed. Reg. 57859 (Sept. 12, 2002).   Under 20 C.F.R. § 404.1520(a)(4)(ii), the ALJ is required to consider "the medical severity" of the claimant's impairments and this includes whether a claimant has a combination of impairments that is severe.  20 C.F.R. § 404.1520(a)(4)(ii) (2011).  In *Sims v. Barnhart*, the Seventh Circuit was "persuaded that the ALJ considered the combined effect of Sims's impairments because he ensured that the VE took into account all of Sims's impairments when determining whether jobs existed in Indiana that Sims could perform."  309 F.3d 424, 432 (7th Cir. 2002).  It is clear that, when questioning the VE, the ALJ relied on the RFCA (R. at 362-69) and FCE (R. at 708) that evaluated Allen's impairments and resulting functional abilities.  Indeed, the limitations he references are directly from these reports.  (R. at 54-56).  In his decision, the ALJ found Dr. Wang's assessment (R. at 355-59) and the FCE very persuasive.  And while he considered the RFCAs by non-examining medical experts, he found those reports did not accommodate all possible limitations imposed by Allen's impairments.  (R. at 24).

"[I]t is proper to read the ALJ's decision as a whole."  *Rice v. Barnhart,* 384 F.3d 363, 370 (7th Cir. 2004).  Throughout the decision, the ALJ references the total impact of Allen's impairments.  Specifically, the ALJ concluded, "The claimant's treatment records establish that he has cervical disc disease and cervical myelopathy with left knee pain and bilateral foot pain and numbness, and it is reasonable to find that this limits his ability to perform basic work

activities."  (R. at 21).  While the ALJ did not specifically state whether a combined effect of Allen's impairments met or equaled a listing, it is apparent, when the decision is read as a whole, that the ALJ considered the combined effect of Allen's impairments when evaluating Allen's functional abilities.

**4.   Sufficiency of the Credibility Determination**

Allen next alleges that the ALJ violated SSR 96-7p by failing to articulate specific reasons for his credibility finding.  Allen attacks the ALJ's conclusion that Allen's statements concerning the intensity, persistence, and limiting effects of his symptoms were not credible, because the language used by the ALJ was similar to the boilerplate language the Seventh Circuit found insufficient in *Parker v. Astrue*, 597 F.3d 920, 921-22 (7th Cir. 2010).  The Seventh Circuit concluded the ALJ's statement that the claimant's testimony was "'not *entirely* credible' yield[ed] no clue to what weight the trier of fact gave the testimony."  *Id.*  SSR 96-7p requires the ALJ articulate "specific reasons for the finding on credibility, supported by the evidence in the case record" in his decision. 1996 SSR LEXIS 4 (July 2, 1996).  That said, an ALJ's credibility determination will not be overturned unless it is patently wrong.  *Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir. 1995).

Unlike the ALJ in *Parker*, here, the ALJ supported his conclusion that Allen was "not credible" with specific reasons.  (R. at 21-24).  At the hearing, Allen described his pain as all day, every day, and all over, and stated that his medication alleviated his pain a little, but not enough to allow him to "get up and move around."  (R. at 47, 40).  The ALJ first determined that even with his physical limitations, the objective medical evidence did not establish that Allen was unable to perform all work, and more specifically sedentary level work.  (R. at 21).  The ALJ examined Allen's frequency of medical treatment and concluded the minimal treatment in

late 2007 and throughout 2008 suggested Allen's functioning did not change significantly and his medication was adequately addressing his symptoms.  (R. at 22).  The ALJ noted no significant side effects from the medication.  (R. at 22).  The ALJ emphasized that at the FCE in February 2009, Allen described being able to function at the sedentary level.  (R. at 22).

Perhaps most significantly, the ALJ also analyzed Allen's diary, which described his activities and pain on a typical day.  (R. at 23).  The ALJ found significant discrepancies between Allen's statements to his medical providers and his statements in the diary.  (R. at 23). Specifically, the ALJ noted Allen failed to mention his surgery or any significant change in his functioning after the surgery in the diary.  (R. at 23).  The ALJ concluded, "[t]hese discrepancies render the statements made by the claimant in his diary, in his disability application materials, and at the hearing less persuasive than they may otherwise have been."  (R. at 23).  The ALJ articulated specific reasons for the credibility determination that were supported by the case record and his conclusion was not patently wrong.  *See Schmidt v. Barnhart*, 395 F.3d 737, 747 (7th Cir. 2005).  The ALJ's credibility determination is therefore upheld.

### 5.  <u>The ALJ's Hypothetical Questions to the VE</u>

Allen claims that the ALJ's hypothetical questions to the VE did not incorporate all of Allen's functional limitations.  Specifically, Allen claims the ALJ failed to include Allen's inability to walk without a cane or walker because of his instability and propensity to fall.  Allen further claims the ALJ failed to include the FCE limitations that he could only stand for 16 minutes before needing a 60 to 120 second sitting break and that he needed multiple opportunities to stand and change position or posture.  "If the ALJ relies on testimony from a vocational expert, the hypothetical question he poses to the VE must incorporate all of the claimant's limitations supported by medical evidence in the record."  *Indoranto v. Barnhart*, 374 F. 3d 470, 474 (7th Cir. 2004).  "However, the question need not take into consideration every

detail of the claimant's impairments especially if the record demonstrates that the VE reviewed all the evidence prior to the hearing." *Herron v. Shalala*, 19 F.3d 329, 337 (7th Cir. 1994).

It is true as Allen emphasizes, that the ALJ did not specifically highlight the time limits on Allen's ability to stand outlined in the FCE report. That said, in three of his hypothetical questions, the ALJ included the limitation on Allen's ability to stand that was found in the RFCA of no more than a total of two hours per workday. (R. at 55, 363). In his third hypothetical question, the ALJ incorporated the FCE's conclusion that Allen needed to change his position or posture regularly when the ALJ included the limitation of being unable to sit still for two hours straight without the opportunity every 30 minutes to get up and move around before sitting back down. (R. at 56, 719). While the ALJ did not specifically mention Allen's use of a cane to walk or his propensity to fall, it is clear the ALJ relied heavily on the RFCA and FCE's assessments of Allen's walking limitations in order to frame his questions. These assessments included that Allen could not walk for more than a total of two hours during the workday, would need to avoid more than occasional stair climbing, balancing, stooping, kneeling, crouching, or crawling, and would have to avoid any type of hazardous climbing. (R. at 54-55, 363-66). Further, the VE testified at Allen's hearing that he had reviewed the records sent to him by the ALJ. (R. at 54). Therefore, the ALJ's hypothetical questions for the VE sufficiently included Allen's functional limitations supported by the medical evidence in the record, including the RFCA and FCE.

**6. VA Disability Rating**

As a final argument, Allen claims the ALJ's failure to give any evidentiary weight to his Veteran's Administration disability rating was reversible error. The ALJ is required to evaluate all of the evidence in the case record, including decisions by other governmental agencies. SSR 06-03p, 2006 SSR LEXIS 5 (Aug. 9, 2006). A decision by a different governmental agency

regarding disability does not bind the ALJ in his disability determination; however, it "cannot be ignored and must be considered." *Id.* As to VA disability ratings, the Seventh Circuit has held the ALJ "should give" the evidence "some weight" in determining a claimant's disability. *Allord v. Barnhart*, 455 F.3d 818, 820 (7th Cir. 2006). In his testimony at the administrative hearing, Allen revealed that he has a VA disability rating of 20 percent. (R. at 35). The ALJ did not mention Allen's VA disability rating in his decision, and therefore the court must assume he did not give any weight to this evidence. The ALJ should've given this evidence "some weight" in his analysis. Without commenting on whether this evidence is a potential game-changer, the Court is compelled to find that this omission constitutes reversible error. *See Kessler v. Astrue*, 2009 U.S. Dist. LEXIS 87756 (S.D. Ind. Sept. 22, 2009).

Allen argues the Ninth Circuit case, *McLeod v. Astrue,* 640 F.3d 881 (9th Cir. 2011), required the ALJ to develop the record regarding Allen's VA disability rating when the record was inadequate. The Ninth Circuit has chosen to extend an evidentiary weight requirement of "great weight" to VA disability ratings, which is distinguishable from the Seventh Circuit requirement that the evidence be given "some weight." *Allord*, 455 F. 3d at 820. In *McLeod*, the Ninth Circuit held that "when the record suggests a likelihood that there is a VA disability rating, and does not show what it is, the ALJ has a duty to inquire." 640 F.3d at 886. At the administrative hearing, McLeod was represented by a lay person and testified that he was receiving benefits from the VA, but that he was not aware of whether he had a disability rating. *Id.* at 884-85. The *McLeod* decision is distinguishable from the facts of Allen's case, because at Allen's administrative hearing he was represented by counsel and he was able to testify as to his VA disability rating of 20 percent. If the ALJ does in fact have a duty to develop the record, it was not present here. In any event, under Seventh Circuit precedent, the ALJ's failure to

mention the VA disability rating warrants remand for consideration of the VA disability determination.

## IV. <u>CONCLUSION</u>

For the reasons stated herein, the decision of the Commissioner of the Social Security Administration in this case is **REMANDED** for further proceedings consistent with this opinion.

IT IS SO ORDERED.

Date: <u>12/29/2011</u>

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Copies to:

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov,pearlie.wadlington@usdoj.gov,lin.montigney@usdoj.gov

C. David Little
POWER LITTLE & LITTLE
powerlittl@accs.net,cdlsr44@gmail.com